Wright, J.
There certainly is evidence tending to support the allegations of the petition. Patterson states that. :Smith was his blood relative, and always acted as a friend toward him. He speaks of him as his “ best friend,” to whom he always appealed for advice in taking jobs of grading. He says he never undertook any job of the kind unless Smith stood by, telling him what was best to do (making out bids for him in contracts for grading streets). He had advised with Smith about bidding oa jobs, as being his confidential friend. Smith told Patterson he had a big job for him, and wanted him to bid on it. Patterson said he did not understand about figuring on jobs; that he did not kuow how to bid on the contract, but would have to trust to Smith’s honor, and, in point of fact, he made no effort to figure on the work, and made no inquiry as to what it could be done for, except from Smith. :Smith said he would give Patterson the preference over ■others, at the same price; stating that their family relations, and the old score of friendship between them, constrained him to do so; further averring that Patterson could not lose any thing, but would make money on the ■transaction, and that he (Smith) would see him through it.
These are Pattersou’s statements. Whether or not they were to be believed, was a question for the jury.
Patterson then states, that Smith told him that Costello, *74 Gregory & Campbell had offered to do this work at twenty cents a yard. These three men were experienced in this' kind of business, a fact of which Patterson was aware. Under these circumstances, Smith knowing that Patterson relied upon him, Patterson made the contract. The statement of Smith, that Costello, Gregory & Campbell had offered to do the work at twenty cents, was untrue.. They never made such offer; and all agree that the work was worth largely more than twenty cents, as in fact do all the witnesses. A single sentence in Gregory’s cross-examination is construed into such offer, and, standing alone,, might bear that construction; but, taking all his testimony together, it is evident that such could not have been his intention. It is claimed, by counsel for Smith, that-these representations of his, as to Costello, Gregory & Campbell, were mere statements of opinion which amounted to nothing. As we regard it, it was no question or matter of opinion. It was an assertion of a fact, and a material fact. It was not a statement of Smith’s belief, but an affirmation that these men had actually offered to do the-work at the price named. And this affirmation appears to-have had a large influence on the plaintiff, which, taken with the faith he had in defendant, induced the acceptance-of the contract. It is undoubtedly true that, as between vendor and vendee, between .whom no relation but that of buyer and seller exists, if the vendor asserts the property sold is within a given sum, this is mere matter of opinion, and no representation like this is sufficient upon which to-base an action of fraud. And, as Chancellor Kent says, the-eases have gone so far as to hold that if the seller should, even falsely affirm that a particular sum had been bid by others, by which means the purchaser was induced to buy,, and was deceived as to the value, no relief can be afforded. 2 Kent, 486.
There are many cases cited, and perhaps more might be,,, where the party selling had stated that he had given so-much for the property, or that he had been offered so-much, ór that he had refused a given sum, and those state- *75 meats were false, and known to be so by the party making-them, yet no action was maintainable. But these were cases where the parties were dealing at arm’s length. One was trying to get as much, the other give as little, as he could. The purchaser had no right to rely upon the assertions made; there was no relationship between the parties such as justified the reposing of confidence by one in the-other.
But the case before us is claimed to he different. It is-alleged that the relations here were such that Patterson was justified in relying upon Smith’s statements. If their dealings theretofore had been of that nature which authorized Patterson to confide in Smith, and follow his advice,, and if Patterson was so authorized here, the two can not be said to have been dealing at arm’s length. It is doubtless true that courts of law will not enforcé mere moral obligations, or seek to establish as contracts what might be-called the mere dictates of honor, and yet the situation of parties toward each other may be such as that rights may arise which could have no existence as between mere-strangers. And this remark can not be confined to those well-known relations of trustee and his beneficiary, guardian, and ward, attorney and client; there are others who-may be held to the speaking of truth, and dealing fairly.. In Smith v. McKay (7 House of Lords, 779), Lord Kingsdown makes the following remarks : “ It is not the relation of solicitor and client, or trustee and cestui que trust, which imposes the duty of making a free disclosure of every circumstance of which it is- important the individual should be apprised.” The principle applies to every case where-influence is acquired and abused, where confidence is reposed and betrayed. The relations with which the court of equity most ordinarily deals are those of trustee and cestui que trust, and such like. It applies specially to those-cases, for this reason, and this only, that from those relations the court presumes confidence put and influence exerted. 'Whereas in all other cases, where those relations-do not subsist, the confidence and the influence must be- *76 proved extrinsieally; but where they are proved extrinsi•cally the rules of reason and common sense, and the technical rules of a court of equity, are just as applicable in the one ease as the other. 1 Story Eq. Jur. § 329a.
"Whether these relations did exist between Smith and Patterson, and were thus extrinsieally proved, was properly .and fairly submitted to the jury, who found in favor of Patterson. Also they must have found that, under these circumstances, Smith made representations which he knew to be false, which he knew Patterson would rely upon, and thus enter upon a contract which Smith’s larger experience must have told him would result in loss.
In regard to the charge by the court, no special instructions were asked indicating what were the defendant’s views of the law, and no particular parts of the charge given excepted to. The exception is general, to the whole ■charge.
It is said, in the briefs, that the court recognized such a relation to exist as would subject defendant to more scrupulous care in dealing with plaintiff than pertains to persons •ordinarily contracting with each other. We do not understand the court as asserting that any such relationship did •exist. That was a question of fact, and the court say,-that if it existed, certain consequences would follow, leaving to the jury to determine the fact.
Upon the whole, we think the court stated the case with •entire fairness, and we can not see wherein they erred. We further think that there was evidence tending to show that :Smith took advantage of his position, influence, and the faith reposed in him, to impose upon Patterson.
He knew that Patterson relied upon him, and implicitly trusted the statements he made, and that previous relations .and existing circumstances justified the confidence reposed. For his own purposes — and as it would seem, to his own advantage — he makes representations of a material fact, which be knew to be false, but which he knew Patterson would take to be true, and act upon. These representations induced *77 tbe contract and subsequent loss. If tbe jury found those facts to be true, tbe verdict was fully warranted.
We bave examined tbe exceptions to rulings upon tbeadmission of testimony, and tbink they are not well taken.

Judgment affirmed,.